UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA RENA JEAN THOMAS,

                                            <u>DECISION AND ORDER</u>
                              Plaintiff,

                                            16-CV-6244L

                    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendants.
_____


## PRELIMINARY STATEMENT

Plaintiff Angela Rena Jean Thomas ("Thomas") brings this action pursuant to Section

205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a

final decision of the Commissioner of Social Security (the "Commissioner") denying her

application for Supplemental Security Income ("SSI") and Disability Insurance Benefits

("DIB"). (Dkt. # 1).

On August 16, 2012, Thomas protectively filed an application for a period of disability

and DIB and SSI alleging disability beginning on March 1, 2011, due to anxiety and depression.

(Tr. 174-181, 226).[1] On December 10, 2012, the Social Security Administration denied

Thomas's application, finding that she was not disabled. (Tr. 80-87). Thomas requested and

was granted a hearing before Administrative Law Judge Michael W. Devlin (the "ALJ").

(Tr. 78-79, 88-95, 99-115). The ALJ conducted the hearing on October 2, 2014, at which

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 8) utilize the internal Bates-stamped
pagination assigned by the parties.

Thomas and vocational expert Julie A. Andrews (the "VE") appeared and testified. (Tr. 17-31, 32-50). In a decision dated December 30, 2014, the ALJ found that Thomas was not disabled and was not entitled to benefits. (Tr. 17-31). On February 17, 2016, the Appeals Council denied Thomas's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-4). Thomas commenced this action on April 12, 2016, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 11; 13). For the reasons set forth below, Thomas's motion (Dkt. # 11) is denied, and the Commissioner's cross motion (Dkt. # 13) is granted. Thomas's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

## DISCUSSION

### I. **Relevant Standards**

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In determining whether the ALJ's decision rests on substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis

of the substantiality of the evidence must also include that which detracts from its weight.'"

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)).  Still, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled[.]"  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law.  *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).  This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for reversal."  *Townley*, 748 F.2d at 112.  Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

## II.  The ALJ's Decision

In this case, the ALJ applied the five-step analysis described above.  At step one, the ALJ found that Thomas had not engaged in substantial gainful activity since March 1, 2011—the alleged onset date.  (Tr. 19).  At step two, the ALJ found that Thomas had the following severe impairments: major depressive disorder with psychotic features and panic disorder without agoraphobia.  (*Id.*).  At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations.  (Tr. 20).  Specifically, in applying the "special technique" for assessing nonexertional limitations, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), the ALJ found that

Thomas had "mild" restrictions in activities of daily living, "moderate" difficulties in social functioning, "moderate" difficulties with regard to concentration, persistence or pace, and experienced no episodes of decompensation. (*Id.*).

Next, the ALJ determined that Thomas retained the RFC to perform a full range of work at all exertional levels, but with certain non-exertional limitations. (Tr. 21). Specifically, the ALJ found that Thomas could understand, remember, and carry out simple instructions and tasks, occasionally interact with coworkers and supervisors, have little to no contact with the general public, work in a low stress work environment (i.e., have no supervisory duties, with no independent decision-making required, and no strict production quotas, minimal changes in work routine and processes, etc.), and consistently maintain concentration and focus for up to two hours at a time. (*Id.*).

At step four, the ALJ found that Thomas could not perform any past relevant work. (Tr. 25). At step five, the ALJ relied on the testimony of the VE and found that, based on Thomas's age, education, work experience, and RFC, Thomas could perform other jobs that exist in significant numbers in the national economy, including laundry laborer (DOT # 361.687-018) and industrial cleaner (DOT # 381.687-018). (TR. 26). Accordingly, the ALJ found that Thomas was not disabled under the Act. (Tr. 27).

## III.  <u>Analysis</u>

Thomas contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 11 at 1). First, Thomas maintains that the ALJ improperly discounted the mental RFC opinion of Ms. Melissa Walker ("Walker")—Thomas's treating therapist—without providing good reasons for doing so. (Dkt. # 11-1 at 13-17). Next, Thomas argues that the ALJ gave significant weight to the opinion of L.

Blackwell, Ph.D., a non-examining, non-treating, state-agency psychological consultant, yet failed to include certain of Dr. Blackwell's limitations into the RFC finding. (*Id.* at 17-20).

### 1. **Opinion of Melissa Walker, MFTT[2]**

Thomas's first contention is that the ALJ failed "to properly consider the opinion [of Walker] and provide good reasons for his failure to give the opinion the great or significant weight it otherwise deserves." (Dkt. # 11-1 at 13). The ALJ attributed only "some weight" to Walker's opinion, which was co-signed by Tzporah Rosenberg, Ph.D., a licensed marriage and family therapist, because "the extreme limitations opined [were] not consistent with the treatment records or [Thomas's] work activity," and the limitations appeared to be "based on [Thomas's] subjective reports of being unable to work or travel, but they [were] not supported by the record or mental status examinations." (Tr. 24). Thomas argues that these reasons "do not constitute the requisite good reasons" necessary for discounting a treating medical source statement, because, in Thomas's view, it is "simply untrue" that Walker's opinion was based on Thomas's subjective complaints, and the opinion was "completely consistent with the treatment records." (Dkt. # 11-1 at 14).

The Commissioner responds that the ALJ gave adequate reasons in discounting Walker's opinion, arguing that her opinion was, in fact, based on Thomas's subjective reports, and that the ALJ correctly stated that opinion was not consistent with the treatment records. (Dkt. # 13-1 at 14-19). The Court agrees with the Commissioner.

At the outset, it is noteworthy that Walker, who is a therapist, is not an "acceptable medical source," within the meaning of the relevant regulations, but rather an "other" medical source. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). While opinions from "other sources" are

---

[2] Although the parties do not indicate what the initials "MFTT" stand for, the Court believes that Ms. Walker was a marriage and family therapist trainee. *See, e.g.*, *Taylor v. Astrue*, 2009 WL 4349553, *2 (C.D. Cal. Nov. 24, 2009).

"important" and "should be evaluated on key issues such as impairment severity and functional effects," S.S.R. 06-03p, 2006 WL 2329939, *3 (S.S.A. Aug. 9, 2006), they are not "presumptively entitled to controlling weight," *Sirris v. Colvin*, 2016 WL 6090585, *3 (W.D.N.Y. Oct. 19, 2016).  Still, "[t]he regulations permit consideration of opinions by other treating sources 'to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Fitzwater v. Berryhill*, 2017 WL 4563899, *5 (W.D.N.Y. Oct. 13, 2017) (quoting 20 C.F.R. § 404.1513(d)).

Although the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, those decisions should be explained" and be based on all the evidence before the ALJ.  *Oaks v. Colvin*, 2014 WL 5782486, *8 (W.D.N.Y. Nov. 6, 2014); *see also Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) (stating that it is within the ALJ's "discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him").  As with "recognized medical sources, 'the amount of weight to give [other source] opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole.'" *Fitzwater*, 2017 WL 4563899 at *5 (alteration omitted) (quoting *Conlin ex rel. N.T.C.B. v. Colvin*, 2015 WL 3961167, *8 (W.D.N.Y. June 29, 2015)).  Furthermore, the ALJ should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning." *Sirris*, 2016 WL 6090585 at *3 (citing S.S.R. 06-03p, 2006 WL 2329939 at *6).  However, "ALJs are not required to evaluate [these sources] in the same manner as required under the treating physician rule." *Amy P. v. Comm'r of Soc. Sec.*, 2018 WL 2095345, *5 (D. Vt. May 7, 2018) (citing S.S.R. 06-03p, 2006

WL 2329939 at *2); *accord Clark v. Berryhill*, 2018 WL 3069207, *7 (N.D.N.Y. June 21, 2018) ("although an ALJ is required to consider the relevant factors, she is not required to provide 'good reasons' for declining to rely on an opinion unless it is from a treating physician").

Here, Walker issued a mental RFC questionnaire, dated September 19, 2014, and co-signed by Dr. Rosenberg, LMFT, related to Thomas's mental impairments. (Tr. 586-91). That report indicated that Thomas began treatment at Walker's office on June 30, 2014, and had since attended four treatment sessions. (Tr. 586). Walker diagnosed Thomas with major depressive disorder, recurrent, with the possibility of psychotic symptoms, and assessed Thomas with a global assessment of functioning ("GAF") score of 48. (*Id.*). Walker's clinical assessment of Thomas indicated that she had a depressed mood and affect, disturbed appetite and sleep, uncontrollable negative thoughts, poor social supports/isolation, and was tearful. (*Id.*). More specifically, Walker noted that Thomas had the following symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which were a source of marked distress; persistent disturbances of mood or affect; emotional withdrawal or isolation; hallucinations or delusions "at intake"; and sleep disturbance. (Tr. 587). Still, Walker opined that Thomas was "likely to improve within 6-12 months" depending on her response to treatment, including medication. (Tr. 586).

Walker then completed several charts aimed at determining Thomas's ability to do work-related activities on a day-to-day basis in a regular work setting, specifically related to the "mental abilities and aptitudes" needed to do unskilled, semiskilled, and skilled work. (Tr. 588-89). As it related to unskilled work, Walker opined that Thomas was most limited, or

had "no useful ability to function,"[3] in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress. (Tr. 588).  Furthermore, in Walker's view, Thomas was "seriously limited"[4] in her ability to: carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; and respond appropriately to changes in a routine work setting.  (*Id.*). Finally, Walker indicated that Thomas had no limitations, or a limited, but satisfactory ability, to do functions such as remember work-like procedures, understand and remember very short and simple instructions, maintain attention for a two-hour segment, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  (*Id.*).

Regarding Thomas's ability to perform semiskilled and skilled work, Walker opined that Thomas's most extreme limitations dealt with her ability to deal with the stress associated with those types of jobs.  (Tr. 589).  However, Thomas was not limited, or had the limited, but satisfactory ability, to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others.  (*Id.*).  Finally, as it pertained to Thomas's ability to do particular types of jobs, Walker opined that Thomas was not limited in her ability to interact appropriately with the general public, maintain socially

---

[3] The questionnaire defined "no useful ability to function" as "an extreme limitation, mean[ing] [the] patient cannot perform this activity in a regular work setting."  (Tr. 588).

[4] The questionnaire defined "seriously limited" to mean the "ability to function . . . is seriously limited and would frequently be less than satisfactory in any work setting."  (Tr. 588).

appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (*Id.*). However, Thomas was extremely limited in her ability to travel in unfamiliar places. (*Id.*). Walker further opined that Thomas would miss more than four days of work per month, and that Thomas could not engage in full-time competitive employment on a sustained basis "at this time." (Tr. 591).

The ALJ discussed this opinion in his determination, specifically acknowledging the fact that Walker assessed varying functional limitations, including Walker's opinion that Thomas would miss more than four days of work per month and that Thomas could not engage in full-time competitive employment on a sustained basis. (Tr. 24). He attributed "some weight" to the opinion based on his view that, among other reasons, Walker's extreme limitations "appear[ed] to be based on the claimant's subjective reports of being unable to work or travel[.]" (*Id.*).

Thomas now argues that "there is absolutely no evidence that Ms. Walker relied on [claimant's own reports] to complete the chart[s] regarding aptitudes on the form." (Dkt. # 11-1 at 15). However, that assertion is belied by a plain reading of Walker's opinion. After each of the three charts Walker completed, the questionnaire provided a chance for her to explain the basis of her opinions, where she assessed that Thomas was either "seriously limited" or had "no useful ability to function." On each occasion, Walker began her explanation with what Thomas had "report[ed]." (Tr. 588-89). Specifically, for the chart related to unskilled work, Walker reasoned that Thomas had reported "not being able to go to work or carry out a full work day without continued worries/thoughts which distract her from her normal work day. [Thomas's] symptoms have caused her significant distress that has affected her ability to go to work. [Thomas] report[ed] that when she was going to work she found that she needed to take extra

breaks or time to calm herself, and [was] easily distracted by her thoughts." (Tr. 588). After the chart for semiskilled and skilled work, Walker explained that Thomas "report[ed] not being able to attend work and if she d[id], she [was] overwhelmed when stressors at work c[ame] up." (Tr. 589). Finally, Walker's assessment of Thomas's ability to perform particular types of jobs was based on Thomas's "reports [of] worries and fears about traveling to places she doesn't know." (*Id.*).

Therefore, there is no merit to Thomas's argument that "there is no evidence [] that [Thomas's] subjective reports were the basis for the completion of the chart[s]." (Dkt. # 11-1 at 15). Based on a plain reading of the explanations provided by Walker for her assessments, rather, the only reasonable conclusion is that Walker's assessments "appear[ed] to be based on [Thomas's] subjective reports of being unable to work or travel," as the ALJ recognized. (Tr. 24). Furthermore, this was a sufficient reason for the ALJ to discount the weight given to the opinion. *See, e.g.*, *Fitzwater*, 2017 WL 4563899 at *5 (finding that ALJ's decision to give "little weight" to an "other source" treating opinion was "clearly supported by the record and consistent with the controlling regulations," where the ALJ, among other things, "correctly found that [the treating chiropractor's] finding that plaintiff was 'totally disabled' was based on plaintiff's 'subjective complaints of pain rather than objective findings'").

Moreover, the ALJ acted within his discretion when he discounted Walker's opinion for the additional that, in the ALJ's view, the extreme limitations to which Walker opined were not "consistent with [Thomas's] treatment records[,] . . . work activity[,] . . . or mental status examinations." (Tr. 24). In coming to this conclusion, the ALJ discussed Thomas's treatment records in detail throughout his decision. For example, Thomas's mental health examinations from a variety of providers consistently demonstrated that, despite having a depressed or anxious

mood, she appeared well-groomed, behaved cooperatively, had good eye contact, logical and coherent thought process, and mostly intact memory, was appropriately oriented, and had fair to good insight, judgment, control, and concentration. (Tr. 289, 293, 335, 342, 344, 347, 579, 581, 583, 600). It also appears that Thomas continued to work periodically throughout the relevant time period, which is documented in consultative examination reports and treatment progress notes. (*See, e.g.*, Tr. 292 (psychiatric evaluation of Kavitha Finnity, Ph.D., dated October 22, 2012, stating, "[Thomas] is currently employed part time as a home health aide. She works 15 hours a week"); Tr. 583 (progress note from Walker, dated August 14, 2014, stating, "[Thomas] arrived to session in scrubs and said that she will be going to work at 3-11pm. [Thomas] said she wanted to go to work to get out of the house and thought it would be good for her to do so")). Moreover, at the October 2, 2014, disability hearing, Thomas indicated that she was currently employed as a personal care aide, and had been working 15-20 hours a week until as recently as September 2014. (Tr. 36-37).

Based on the above, the Court finds that the ALJ acted within his discretion in attributing "some weight" to the mental RFC opinion of Walker, and that he adequately explained his reasoning for discounting the weight given to this "other source" opinion based on the record evidence before him. Therefore, remand on this basis is not warranted.

### 2. Opinion of L. Blackwell, Ph.D.

Thomas's second contention is that the ALJ's RFC determination does not reflect all of the limitations assessed by Dr. Blackwell, despite affording Blackwell's opinion "significant weight." (Dkt. # 11-1 at 17-20). In this regard, Thomas argues that the ALJ "cherry-picked" parts of Blackwell's opinion by omitting Blackwell's opinions that Thomas had moderate limitations in "the ability to maintain attention and concentration for extended periods" and in

"the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." (*Id.* at 19) (quoting Tr. 70).

The Commissioner responds that these two specific limitations are found in the "Summary Conclusions" portion of Blackwell's mental RFC assessment and do not constitute Blackwell's "actual mental RFC assessment." (Dkt. # 13-1 at 20-21). In any event, according to the Commissioner, the ALJ's RFC determination is consistent with the functional capacity assessment found by Blackwell, which is also supported by the evidence of record. (*Id.* at 21-22). The Court agrees with the Commissioner.

In arriving at Thomas's RFC, the ALJ gave "significant weight" to the December 7, 2012, opinion of state-agency psychological consultant Blackwell. (Tr. 25). The ALJ referenced the psychiatric review techniques ("PRT") portion of Blackwell's report, in which Blackwell noted that Thomas had "mild" restrictions of activities of daily living, "mild" restrictions in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace. (Tr. 25, 61). Blackwell further opined, as Thomas points out, that Thomas was "moderately limited" in her ability to maintain attention and concentration for extended periods, and in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number of length of rest periods. (Tr. 62). Nonetheless, as the ALJ noted, in explaining his assessments, Blackwell opined that Thomas could work around other people and sustain substantial gainful activity. (Tr. 25, 62-63).

Thomas is correct that the ALJ did not explicitly mention the above-two limitations in his RFC finding, and that an ALJ "may not 'cherry-pick' medical opinions that support his or her opinion while ignoring opinions that do not." *Tim v. Colvin*, 2014 WL 838080, *7 (N.D.N.Y.

Mar. 4, 2014). However, it is also "not require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Similarly, "it is not required that the RFC assessment 'perfectly correspond' with [a doctor's] opinion." *Huber v. Berryhill*, 2017 WL 3267572, *4 (W.D.N.Y. Aug. 1, 2017) (quoting *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013)). "What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review." *Sewar v. Berryhill*, 2018 WL 3569934, *2 (W.D.N.Y. July 25, 2018).

Here, the Court finds that the ALJ sufficiently explained the basis for his RFC finding. The ALJ discussed the medical opinion evidence in detail, set forth his reasoning for the weight afforded to each opinion, including Blackwell's mental RFC assessment, and cited and discussed specific evidence in the record which supported each of his determinations. In discussing Blackwell's opinion, the ALJ explained that it deserved "significant weight" because it was "generally consistent with the record, and it [was] supported by the opinion of Dr. Finnity. The claimant has worked part time throughout the alleged period of disability and has been able to interact with others as a home health aide." (Tr. 25).[5] The ALJ further concluded that although Thomas "might credibly not be able to perform full-time work in her field . . . there is nothing in the record that indicates she would be unable to work full time in an unskilled and less stressful work environment." (*Id.*). I find that the ALJ's findings were explained with sufficient specificity to permit meaningful review by this Court, and that the ALJ did not improperly cherry-pick from the record in arriving at his RFC finding.

---

[5] In relevant part, Dr. Finnity opined in October 2012 that Thomas could "follow and understand simple directions and perform simple tasks. She c[ould] maintain attention and concentration and maintain a regular schedule. She c[ould] learn new tasks and perform complex tasks with supervision. She c[ould] make appropriate decisions. She has difficulty relating with others and dealing with stress due to symptoms of depression and anxiety." (Tr. 294).

In any event, assuming *arguendo* that the ALJ erred when he declined to explicitly include the moderate limitations assessed by Blackwell regarding Thomas's "ability to maintain attention and concentration for extended periods" and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms," that error is harmless. The ALJ determined in his RFC that Thomas could, among other things, "consistently maintain concentration and focus for up to two hours at a time." (Tr. 21). This "sufficiently describes and accounts for 'moderate' limitations in attention and concentration, with or without the additional limitations to simple instructions, simple tasks, no [strict] production quotas, and low stress work that the ALJ imposed here." *Sewar v. Berryhill*, 2018 WL 3569934 at *2 (collecting cases); *see also Ross v. Colvin*, 2015 WL 1189559, *11 (W.D.N.Y. Mar. 16, 2015) ("[c]ontrary to [plaintiff's] contention, I conclude that the ALJ incorporated [the consultant's] opinion into his RFC assessment by including the limitation that [plaintiff] could only sustain attention and concentration for up to two hours at a time").

Moreover, the Court finds that the ALJ's RFC finding adequately accounts for Blackwell's opinion that Thomas is "moderately limited" in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number of length of rest periods. *See, e.g.*, *Ross*, 2015 WL 1189559 at *11 (rejecting plaintiff's argument that ALJ failed to account for several moderate limitations assessed by a consultative examiner, such as limitations in the ability to complete a normal workday or workweek without interruption; "[a]lthough the ALJ did not discuss each of the moderate limitations assessed by [the consultative examiner], he incorporated moderate limitations into his RFC by restricting [plaintiff] to jobs that require an individual to understand, remember, and carry out simple instructions, make only simple

14

work-related decisions and maintain attention and concentration for only two-hour segments");
*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's finding that claimant could perform "simple, routine, repetitive" tasks adequately accounted for opinion that claimant was "moderately" limited in ability "to perform at a consistent pace without an unreasonable number of rest periods," among other things).

As such, even if the ALJ erred in declining to explicitly incorporate all of the limitations opined by Blackwell into his RFC finding, that finding sufficiently accounted for such limitations, and that error was harmless.

## CONCLUSION

For the foregoing reasons, Thomas's motion to vacate the ALJ's decision and remand the matter (Dkt. # 11) is **DENIED**, and the Commissioner's cross motion for judgment on the pleadings (Dkt. # 13) is **GRANTED**. Thomas's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      October 2, 2018.